[No. C031628. Third Dist. Mar. 29, 2001.]

In re the Marriage of RICHARD W. and SUSAN ANN BRIMBERRY KATZBERG.
RICHARD W. KATZBERG, Respondent, v.
JANICE LEE BRIMBERRY WHITE, as Executor, etc., Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part C.

976

**COUNSEL**

Charlotte L. Keeley for Appellant.

Elliot K. Sevier for Respondent.

**OPINION**

**KOLKEY, J.**—Janice Lee Brimberry White,[1] as successor in interest for Susan Ann Brimberry Katzberg (hereinafter collectively referred to as

---

[1]Pursuant to California Rules of Court, rule 48(a), Janice Lee Brimberry White has been substituted in place of appellant Susan Ann Brimberry Katzberg.

mother), appeals from an order granting the motion of respondent Richard W. Katzberg (father) to modify his child support obligations. Mother claims that the trial court failed to follow the statewide uniform guideline (hereinafter the uniform guideline) for child support by "improperly crediting mother's custodial periods to father when the child was absent from both parents' homes attending private boarding school." She also claims that the trial court failed to place on the record its reasons for failing to follow the uniform guideline. Finally, she argues that the trial court improperly denied her request for the attorney fees that she incurred in opposing the motion for modification.

"California child support law has become highly deterministic. Certain sections of the Family Code are now redolent of the flavor of the Internal Revenue Code, complete with definitions of income and allowances for deductions." (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144 [61 Cal.Rptr.2d 559].) One area in which a trial court retains some discretion, however, is in determining the percentage of "primary physical responsibility," also known as "parenting time," to be imputed to each parent. That percentage is a component of the formula used in the uniform guideline to calculate child support. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2000) ¶¶ 6:166, 6:168.6, pp. 6-64, 6-65 to 6-66 (hereinafter Hogoboom & King).)

In this case, the parties agreed to send their minor child to an East Coast boarding school. The trial court concluded that the time that the child was away at school should be imputed solely to the father because "he is the primary custodial parent and it is his family trust that is paying for the cost of the child's school." As a result, the mother's parenting time was reduced from 38 percent to 17 percent. Plugging this 17 percent figure into the uniform guideline formula, the mother's child support was calculated to be $502 per month. The trial court then awarded mother supplemental child support of $104 per month to pay for half of her expenses incurred in traveling to visit the child during the school year.

We shall affirm. The trial court's decision to impute to father the time the child is away at school was a proper exercise of the court's discretion. Having made that determination, the trial court simply plugged the appropriate figures into the uniform guideline formula to determine the statutorily presumed amount of child support to be awarded to mother. And because the trial court followed the statutory formula, the court was not required to place on the record the reasons for the award. Finally, in the unpublished portion of our opinion, we reject mother's claim that the trial court abused its discretion in denying her request for attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not in dispute and may be briefly stated.

The parties' marriage was dissolved pursuant to a judgment of dissolution of marriage (status only) entered in December 1994. The parties have three children, but only one, Richard Jr. (Richard or the child), born in 1982, was a minor.

Since the dissolution of the marriage, the parties had shared joint legal custody of Richard, but the father's home served as Richard's primary residence.[2] In June 1995, the parties reached a settlement agreement on all remaining issues, which was reduced to a judgment entered on March 2, 1998. The judgment declared that "[f]ather is the primary caretaker of the parties' child and [m]other has the child in her care approximately 35 [percent] of the time." Father's parenting time apparently included the time that Richard attended school, which as of June 1995 was a private school in Sacramento. Based on mother's parenting time of 35 percent, child support of $1,240 per month was ordered.

As of the time of the instant proceeding (and following a modification of the initial order), mother's parenting time had been increased to 38 percent.

In October 1998, father filed a motion, requesting modification of his child support obligation. In support of his motion, father noted that Richard was now attending an East Coast boarding school in North Carolina, that mother's parenting time had thereby been reduced from 38 percent to 17 percent, that he (the father) continued to be Richard's primary caretaker, that he was paying for all of the child's transportation to and from the school and incidental expenses, and that the schooling was being paid for from an education trust "from [his] family that represents the majority share of [his] personal inheritance." The reduction in mother's parenting time to 17 percent was the result of imputing to the father all of the parenting time incurred while Richard was away at school.[3] And the reduction in mother's parenting time to 17 percent would, in turn, reduce the father's child support obligation. Father argued that this reduction would not be unfair in light of the fact that the mother's financial burden had been diminished as a result of Richard's attendance at an out-of-state school.

---

[2]Mother concedes that father is the primary custodial parent in this case.

[3]A "Parenting Schedule," taking into account Richard's boarding school status, shows that mother was expected to exercise actual physical supervision over the minor on 63 days for the August 26, 1998 - August 25, 1999 period. By giving mother credit for all of this time, her parenting time was set at 17 percent (63/365).

Mother opposed the motion. In her responsive declaration, mother argued that the assignment to father of all the time that the child was attending school "[was] the same argument a custodial parent would make, counting only the hours a non-custodial parent [was] at home with a child when calculating timeshare." She contended that the "argument is fallacious and [did] not represent [her] actual costs of exercising parenting time which [had] *increased* due to [her] son's attendance at school" (original italics) since the cost of two trips per year to the school was about $2,000 per trip, and paying for the child to spend at least one of his school breaks with her relatives would cost $555 per year. She observed that she had to continue her expenses of maintaining a home for Richard when he came home.

Following hearing and argument, the trial court ruled on the issue "who should get credit for the time the child is away at boarding school" and concluded that "in these circumstances . . . the time that the child is at school should be imputed to Father for the reason that he is the primary custodial parent and it is his family trust that is paying for the cost of the child's school." But the court further found "that Mother will reasonably incur approximately $2,500 a year in travel expenses to visit the child in North Carolina" and stated that the court was "inclined to include one-half of that expense as supplemental child support."

As a result of the ruling, the mother's parenting time was reduced to 17 percent; child support was set at $502 per month; and supplemental child support (travel expenses) was set at $104 per month. Finally, the trial court ruled that the parties would bear their own attorney fees. Mother appealed from the ruling.

The trial court's findings, as set forth in the ruling, were subsequently incorporated into a formal statement of decision prepared by mother and signed by father and the trial court, which was intended to serve as the final order of the court. We treat mother's appeal as having been taken from this order. (Fam. Code, §§ 3554, 3654; Cal. Rules of Court, rule 2(c).)

## DISCUSSION

### A. *The Uniform Guideline Formula*

"In California there is a 'statewide uniform guideline for determining child support orders.' (Fam. Code, § 4055, subd. (a).)[4] This guideline is an algebraic formula. (*Ibid.*) The intention of the Legislature in adopting the uniform guideline was 'to ensure that this state remains in compliance with

---

[4] Unless designated otherwise, all statutory references are to the Family Code.

federal regulations for child support guidelines.' (§ 4050.) The court may depart from the guideline only in 'special circumstances' set forth in the child support statutes. (§ 4052.) '[W]hen ordering child support the trial court lacks discretion to vary from the presumptively correct amount, calculated by applying the algebraic formula in the statute, unless one or more of the statutorily enumerated rebuttal factors is found to exist.' [Citation.] . . .

"There is a rebuttable presumption that the statewide uniform guideline formula amount is the correct amount of child support to be ordered. (§ 4057.) The presumption can be rebutted by showing that application of the formula 'would be unjust or inappropriate in the particular case . . . .' (*Ibid.*) . . .

"If the court determines that the statewide uniform guideline formula amount would be unjust or inappropriate in a particular case, the court must state 'in writing or on the record' the reasons why the amount of support ordered differs from the guideline amount. (§ 4056, subd. (a)(2).) The court must also state in writing or on the record the amount of support that would have been ordered under the guideline formula. (§ 4056, subd. (a)(1) . . . .) The court's order is reviewed for an abuse of discretion. [Citation.]" (*County of Stanislaus v. Gibbs* (1997) 59 Cal.App.4th 1417, 1419-1420 [69 Cal.Rptr.2d 819], fn. omitted.)

Section 4055 sets forth the uniform guideline formula for child support determinations.[5]

---

[5]Section 4055 provides in relevant part:

"(a) The statewide uniform guideline for determining child support is as follows:

"$CS = K [HN - (H\%) (TN)]$.

"(b)(1) The components of the formula are as follows:

"(A) CS = child support amount.

"(B) K = amount of both parents' income to be allocated for child support as set forth in paragraph (3).

"(C) HN = high earner's net monthly disposable income.

"(D) H% = approximate percentage of time that the high earner has or will have primary physical responsibility for the children compared to the other parent. . . .

"(E) TN = total net monthly disposable income of both parties.

"(2) To compute net disposable income, see Section 4059.

"(3) K (amount of both parents' income allocated for child support) equals one plus H% (if H% is less than or equal to 50 percent) or two minus H% (if H% is greater than 50 percent) times the following fraction:

| Total Net Disposable Income Per Month | K |
| --- | --- |
| "$0-800 | $20 + TN/16{,}000$ |
| "$801-6,666 | 0.25 |
| "$6,667-10,000 | $0.10 + 1{,}000/TN$ |
| "Over $10,000 | $0.12 + 800/TN$." |

### B. *The Time-share Component*

■ One component of the uniform guideline formula is the "H" factor, which represents the "approximate percentage of time that the high earner [here, father] has or will have primary physical responsibility for the children compared to the other parent." (§ 4055, subd. (b)(1)(D).)

The relevant phrase is "primary physical responsibility." In *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1160 [62 Cal.Rptr.2d 466], the Court of Appeal pointed out that this time-share percentage is based on " 'the parents' respective periods of primary physical *"responsibility"* for the children rather than physical "custody." ' " (*In re Marriage of Drake, supra,* 53 Cal.App.4th at p. 1160, citing Hogoboom & King, supra, ¶ 6:168, p. 6-64.) As noted in Hogoboom & King, "[u]se of this terminology is purposeful: i.e., to clarify that [section] 4050 et seq. is not intended to alter current child custody law in any manner (no struggle for 'custody' is necessary to apply the statutory formula). [Citations.]" (Hogoboom & King, *supra,* at ¶ 6:168, p. 6-64.)

Accordingly, the time of a parent's primary physical responsibility has been held to include the time that the child is in child care (*In re Marriage of Whealon, supra,* 53 Cal.App.4th 132) and may include the time of a grandparent's visitation (§ 3103, subd. (g)(1)), as long as that parent is responsible for the child during that time. Likewise, the time-sharing component can be applied to the parent who has full responsibility for disabled adult children who are not in the custody of either parent. (*In re Marriage of Drake, supra,* 53 Cal.App.4th at p. 1160; Hogoboom & King, *supra,* ¶ 6:168.1, pp. 6-64 to 6-65.)

In *In re Marriage of Whealon, supra,* 53 Cal.App.4th 132, for instance, the father argued that since he was paying for one-half of the day care costs, the mother—who had primary physical custody of the infant son—should not be given credit for all of the time the child spent in day care for purposes of computing the time-share factor for child support. (53 Cal.App.4th at p. 145.) The Court of Appeal rejected the father's claim: "While this argument is not without a certain good-for-the-gander-good-for-the-goose attractiveness, it ultimately founders on the practical reality of day-to-day responsibility for a child. It is the custodial spouse who, after all, has the burden of finding, arranging and fronting the money for appropriate day care, who must deliver and pick up the child, and whose workday will be interrupted if there are any medical or other emergencies." (*Ibid.*) The *Whealon* court held

that the trial court did not err in imputing to the mother the time in which the child was in day care. (*Ibid.*)

█. In this case, we cannot say that the trial court abused its discretion by imputing Richard's time in boarding school to father. After all, the father was the primary custodial parent, and his home had been Richard's primary residence since June 29, 1995. Indeed, the prior judgment confirmed that father "[was] the primary caretaker," and mother conceded that this was the case before the trial court. Father signed (and mother refused to sign) the contract allowing Richard to attend the boarding school, leaving father responsible for any of the costs associated with the school. Further, father paid for Richard's transportation to and from school and for his incidental expenses. And a family trust established by father's parents paid for Richard's room, board, and tuition. Based on this evidence, it was not unreasonable—and thus not an abuse of discretion—for the trial court to have concluded that the father in this case had assumed overall physical responsibility for Richard while the child was away at school, no less than did the parent of the child in day care in *In re Marriage of Whealon, supra*, 53 Cal.App.4th 132, or the parent responsible for the disabled adult child who was not in the custody of either parent in *In re Marriage of Drake, supra*, 53 Cal.App.4th at page 1160.

Admittedly, Hogoboom & King, notes that the trial court retains the discretion to apportion parenting time for the time that the child is in day care or in school to the noncustodial parent when there is proof that such parent "assisted in finding, arranging for and paying the up-front money for appropriate day care, shares in transporting the child to and/or from the day care provider, and is available to respond to medical and other emergencies involving the child while in day care." (Hogoboom & King, *supra*, ¶ 6:168.6, p. 6-66.)

But mother's showing in this regard was remarkably weak. She did not arrange for payment of the schooling; she did not share in the transportation responsibilities; and there was no evidence that she was the one who would have to respond to medical or other emergencies. To the contrary, father had signed the contract with the school and was the primary caretaker.

Mother argued at oral argument that she gave the child a calling card and helped find the school, but mother's declaration before the trial court does not support these statements. Instead, these statements come from counsel's *unsupported hearsay statements* at the hearing in the trial court, and could therefore be disregarded by the court.

In contrast, as we have noted, the record shows that Richard's transportation costs to and from school, as well as his incidental expenses, were borne exclusively by father; that the education trust that was being used to pay the cost of Richard's school-related expenses represented the "majority share of [the father's] personal inheritance" and would be "completely depleted by the time of [the child's] graduation from high school"; and that mother refused to sign the school contract assuming responsibility. It can be inferred that should an emergency arise, financial or otherwise, the father would be primarily responsible for taking whatever action was necessary to remedy the situation. Under these facts, it simply cannot be said that the trial court abused its discretion in imputing Richard's school time solely to father. (Hogoboom & King, *supra*, ¶ 6:168.6, p. 6-66 ["[M]ost trial courts will credit the time the child spends in day care or school to the custodial parent."].)

While an argument could be made that the circumstances here—where the child is living away from home—differ from that of child care where the child is nonetheless residing every night with the primary caretaker, that does not necessarily alter who has primary physical responsibility for the child and thus to whom the time at school should be imputed. Mother has not shown why that distinction should affect the imputation here. And *In re Marriage of Drake, supra,* 53 Cal.App.4th at page 1160, certainly suggests otherwise, since there the court ruled that a parent could have full physical responsibility over a disabled child who was not in either parent's custody.

Mother argues that "crediting Mother's school-year parenting time to Father in the 'timeshare' component of the child support formula because he or his parents pay private school tuition is contrary to the holding of the *Whealon case.*" But *Whealon* makes clear that the allocation of time depends on the "practical reality of day-to-day responsibility for a child" (*In re Marriage of Whealon, supra,* 53 Cal.App.4th at p. 145), and father here has assumed those responsibilities, not mother. We acknowledge that this case might have been different if the mother had been the primary caretaker and signed the contract with the school, even if the father had paid for the education expenses in whole or in part. But that was not the case.

Mother also argues that "a parent can exercise physical responsibility for a child who does not reside in that parent's home." She presumably intends to argue that the fact that her son does not reside with her does not mean that all of the time away from her should be imputed to father. But by that same reasoning, the father can argue that the child's presence at boarding school does not preclude him from exercising physical responsibility. And based on

the evidence before the trial court, we cannot say that it abused its discretion in finding that it was father who assumed that responsibility while the child was away at school.

Mother further argues that "the trial court reduced guideline child support in consideration of Father's . . . payment of 'add-on' education expenses." She cites section 4062 for this proposition, which statute provides that costs related to educational needs may be ordered as *additional* child support.[6] But the trial court did not reduce the child support in consideration of father's payment of all of the education expenses. Instead, it calculated child support pursuant to the uniform guideline formula, and determined the percentage of parenting time for purposes of that formula based on its conclusion that father was responsible for the child while at school. The fact that the education was paid for out of father's inheritance was simply a factor supporting the court's conclusion that the father (not the mother) had assumed responsibility for the child while away at school.

Accordingly, we reject mother's claim that the trial court abused its discretion in determining the proper percentage of time allotted to mother, or improperly deviated from the uniform guideline for child support. And because the trial court applied the proper formula, the court was not required to state any reasons for the award of support that was made. Under section 4056, the court is only required to do that "whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount . . . ." (§ 4056, subd. (a).)[7]

## C. *Attorney Fees*\*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

[6]Section 4062 states in relevant part:

"(b)   The court may order the following as additional child support:

"(1)   Costs related to the educational or other special needs of the children.

"(2)   *Travel expenses for visitation.*" (Italics added.)

[7]Section 4056 states in relevant part:

"(a)   To comply with federal law, that court shall state in writing or on the record, the following information whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount under this article:

"(1)   The amount of support that would have been ordered under the guideline formula.

"(2)   The reasons the amount of support ordered differs from the guideline formula amount.

"(3)   The reasons the amount of support ordered is consistent with the best interests of the children."

\*See footnote, *ante*, page 974.

## DISPOSITION

The judgment (order) is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 26(a).)

Scotland, P. J., and Callahan, J., concurred.