15 Cal.Rptr.3d 59 (2004)
119 Cal.App.4th 1030
Jose DASILVA, Appellant,
v.
Sharon DASILVA, Respondent.
No. G032410.
Court of Appeal, Fourth District, Division Three.
June 25, 2004.
*60 Vincent L. Goodwin, Newport Beach, for Appellant.
Obi I. Iloputaife, Anaheim, for Respondent.
Certified for Partial Publication.[*]

OPINION
O'LEARY, J.
It has been four years since Jose and Sharon DaSilva began their divorce proceedings and about two years since we last reviewed their ongoing child support dispute. (In re Marriage of DaSilva (April *61 24, 2002, G028716) [nonpub. opn.].) In our previous opinion, we remanded the case to the trial court with directions to make a factual finding on the record supporting its "H%" calculation  which is a component of the equation used by trial courts when making child support orders.[1] It represents the "... approximate percentage of time that the high earner has or will have primary physical responsibility of the child[] compared to the other parent."
On remand, the trial court initially concluded Jose's timeshare was 42 percent but, a few months later, reconsidered the issue on its own motion and changed the figure to 29.1 percent. The "correction" was based in large part on the court's reading of this court's newly published opinion In re Marriage of Rosen (2002) 105 Cal.App.4th 808, 826, 130 Cal.Rptr.2d 1 (Rosen). On appeal, Jose argues the court misinterpreted Rosen as changing the rules on how to calculate timeshare percentages. We agree and again reverse the court's ruling based on this error, remanding the matter, hopefully, for the last time. In all other respects, the court's judgment is affirmed.

I
"California's child support statutes are a legal world unto themselves." (In re Marriage of Hall (2000) 81 Cal.App.4th 313, 316, 96 Cal.Rptr.2d 772.) When making a child support order, trial courts are faced with a "rigid algebraic formula" found in Family Code section 4055.[2] "The actual text of section 4055 would probably not be called the Legislature's most lucid work by anyone. It is ... a `glorified math problem.' One doesn't so much read it as plug numbers into the basic equation. ("CS = K [HN-(H%)(TN)]"  There, we trust that's perfectly clear.) The statute virtually beckons the eyes to glaze over." (Id. at p. 317, 96 Cal.Rptr.2d 772.)
The rules regarding how to calculate the "H%" factor of the uniform guideline formula were not changed by this court's opinion in Rosen, supra, 105 Cal. App.4th 808, 130 Cal.Rptr.2d 1. The rules are well established by case law: The trial court is required to determine the "approximate" percentage of time Jose has or will have "primary physical responsibility" for his son Justin. This calculation "`is based on the parents' respective periods of primary physical "responsibility" for the children rather than physical "custody."'" (In re Marriage of Drake (1997) 53 Cal. App.4th 1139, 1160, 62 Cal.Rptr.2d 466 (Drake), citing Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) ¶ 6:168, p. 6-52.)
"The relevant phrase is `primary physical responsibility'" and as such timesharing "properly may be `imputed' to a parent (or between parents) when the child is not in either parent's physical custody. ... [¶] Conversely, however, no time-sharing adjustment should be made in the guideline formula where the child is not under either parent's physical supervision. [Citation.]" (Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶ 6:168.1, pp. 6-66 to 6-67.)
Timesharing has been credited to parents having full responsibility for the physical situation and care of a disabled adult child (Drake, supra, 53 Cal.App.4th at p. 1160, 62 Cal.Rptr.2d 466), and may also include the time spent during court ordered "grandparent's visitation (§ 3103, subd. (g)(1)), as long as that parent is *62 responsible for the child during that time." (In re Marriage of Katzberg (2001) 88 Cal.App.4th 974, 981, 106 Cal.Rptr.2d 157 (Katzberg).)
In the case of In re Marriage of Whealon (1997) 53 Cal.App.4th 132, 145, 61 Cal. Rptr.2d 559, the court rejected the father's argument he should be given credit for the time his son spent in day care because he paid half of the tuition. The court reasoned his argument "ultimately founders on the practical reality of day-to-day responsibility for a child. It is the custodial spouse who, after all, has the burden of finding, arranging and fronting the money for appropriate day care, who must deliver and pick up the child, and whose work day will be interrupted if there are any medical or other emergencies." (Ibid.)
Katzberg, supra, 88 Cal.App.4th 974, 106 Cal.Rptr.2d 157, is also instructive. There, the parents disputed how to apportion the time their child spent in boarding school. The trial court had imputed all the time to the father, who was the primary custodial parent and whose home was the child's primary residence. The Katzberg court found this was not an abuse of discretion because the record showed the child's "... transportation costs to and from school, as well as his incidental expenses, were borne exclusively by father; that the education trust that was being used to pay the cost of [the child's] school-related expenses represented the `majority share of [the father's] personal inheritance' and would be `completely depleted by the time of [the child's] graduation from high school'; and that mother refused to sign the school contract assuming responsibility. It can be inferred that should an emergency arise, financial or otherwise, the father would be primarily responsible for taking whatever action was necessary to remedy the situation." (Id. at p. 983, 106 Cal.Rptr.2d 157.)
In summary, if a parent desires credit for time the child is not physically with them, then the parent has the burden of producing admissible evidence demonstrating he or she is primarily responsible for that child during those challenged times.[3] Relevant factors include: (1) who pays for transportation or who transports the child; (2) who is designated to respond to medical or other emergencies; (3) who is responsible for paying tuition (if any) or incidental school expenses; and (4) who participates in school activities, fundraisers, or other school-related functions.
It is often the case that the above categories, on any given day, are shared by both parents to some degree. We recognize many families have complex arrangements (and various backup plans) for dealing with transportation issues, school hours, and related extracurricular activities that can change on a daily basis. In recognition of this reality, courts are asked to "approximate" hours of responsibility and have the discretion to apportion time for school hours depending on the particular parent's overall level of involvement in the school day routine.
In our case, the record showed the parents shared the responsibility of delivering and picking up their son from school, but there was little evidence regarding who was responsible for Justin during school hours. At issue was the allocation of approximately 1260 hours, which computes to approximately 52 days. (This calculation *63 is based on several assumptions. We recognize each school district is different, but estimate there are approximately 180 school days in a year. Due to Justin's age, we will assume a seven-hour school day. Of course, these figures can be adjusted according to proof at trial.)
However, allocating hours of "responsibility" was not an issue before the court in Rosen, supra, 105 Cal.App.4th at page 824, 130 Cal.Rptr.2d 1. In that case, a different panel from this court, determined the court's award of spousal support and child support had to be recalculated because it was based on erroneous findings of the father's cash flow and ability to pay. (Id. at p. 815, 130 Cal.Rptr.2d 1.) In so ruling, this court also rejected the father's additional argument that "the trial court calculated child support based upon an incorrect calculation of [the mother's] custody time with the children." (Id. at p. 823, 130 Cal.Rptr.2d 1.)
In Rosen, the father was awarded primary physical custody of the children. The mother's visitation/custody hours were delineated in a schedule contained in the judgment. There was no dispute over whether the father had primary physical responsibility during any of the mother's designated hours of custody. Nor did the mother claim she was primarily responsible for the children at any time other than her scheduled custody hours. The parties only disputed whether the court miscalculated the mother's total hours with the children.
In the Rosen case, this court independently calculated the hours and concluded, "[t]he trial court ... did not err in calculating child support based upon a finding that [the mother] has custody 30 percent of the time." (Rosen, supra, 105 Cal.App.4th at p. 826, 130 Cal.Rptr.2d 1.)[4] This court did not engage in a comprehensive discussion of the child support formula. Nowhere in the Rosen opinion did this court hold trial courts are to disregard the large body of case law and rules regarding calculation of the "H%" factor. Rosen was a rare case in which the term "hours of custody" and "hours of primary responsibility" were interchangeable. It should not be implied from the Rosen opinion that this court disagrees with or disapproves of the cases interpreting the "H%" factor to require calculations based on "`the parents' respective periods of primary physical "responsibility" for the children rather than physical "custody."'" (Drake, supra, 53 Cal.App.4th at p. 1160, 62 Cal.Rptr.2d 466.)
Unfortunately, the trial court believed it was following the law (Rosen) when it mistakenly calculated the "H%" factor solely on Jose's awarded hours of physical custody.[5] It appears from the record that Jose *64 should have been credited for at least some of the time his son spent at school. Accordingly, the court's orders to the contrary must be reversed and the matter remanded for the timeshare percentage to be recalculated.

II-V[**]

DISPOSITION
The court's orders concerning Jose's (past and current) timeshare percentages are reversed. The trial court is directed to reconsider "`the parents' respective periods of primary physical "responsibility" for ...'" Justin during school hours (Drake, supra, 53 Cal.App.4th at p. 1160, 62 Cal.Rptr.2d 466), as well as any other mathematical errors contained in its previous orders. The court's March 2003 ruling, changing the joint custody residential arrangement, is affirmed. Jose's request for attorney fees is denied. Sharon's motion to dismiss and request for sanctions/attorney fees are denied. Respondent shall recover her costs on appeal.
WE CONCUR: BEDSWORTH, Acting P.J., and MOORE, J.
NOTES
[*] Under California Rules of Court, rules 976(b) and 976.1, only the Introduction, part I of the Discussion, and the Disposition are certified for publication.
[1] The full equation can be found in Family Code section 4055. It is CS = K [HN-(H%)(TN)].
[2] All further statutory references are to the Family Code, unless otherwise indicated.
[3] As noted in one treatise, "As a practical matter, if the noncustodial parent does not raise the issue and come forth with competent evidence on the point, most trial courts will credit the time the child spends in day care or school to the custodial parent." (Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶ 6:169.1, p. 6-69; Katzberg, supra, 88 Cal.App.4th at p. 983, 106 Cal.Rptr.2d 157 (citing text).)
[4] The analysis of this dispute is contained in a few short paragraphs. This court stated, "We have independently calculated the number of hours of custody in both odd and even years based upon the `Judgment on Bifurcated Issue of Custody and Visitation.' In making this calculation, we have assumed a seven-hour school day and a December vacation two weeks in length, with each parent having custody for one of those weeks. [¶] With those assumptions, we have calculated [mother] has custody for ... 30.97 percent in odd years and 30.93 percent in even years. There might be some overlap between [mother's] weekend custody and holidays that could reduce that percentage to 30 percent, the amount used by the court. The trial court ... did not err in calculating child support based upon a finding that [mother] has custody 30 percent of the time." (Rosen, supra, 105 Cal. App.4th at p. 826, 130 Cal.Rptr.2d 1.)
[5] We note, that the record shows the trial court was reluctant to make this ruling but felt it must follow the case law. It believed the ruling was unjust: After all, there was evidence Jose was partially responsible for Justin during school hours. The court had previously determined: (1) Jose was listed (in addition to Sharon) on the school emergency card; (2) Jose often took Justin to school; (3) Jose chaperoned at school events and acted as a field trip supervisor; (4) Jose cared for Justin when he was ill; and (5) both parents worked 20 hours per semester "... as active parents at the child's school[.]"
[**] See footnote *, ante.