Filed 5/4/22  Marriage of Metzler CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of MICHAEL and ANDREA METZLER. | |
| | D078715 |
| MICHAEL METZLER, | |
| Appellant, | (Super. Ct. No. DN188024) |
| v. | |
| ANDREA METZLER, | |
| Respondent. | |

APPEAL from judgments of the Superior Court of San Diego County, William Y. Wood, Judge.  Affirmed.

Michael Metzler, in pro. per., for Appellant.

No appearance by Respondent.

Michael and Andrea Metzler married in 1997, had five children together, and separated in 2016.  After a hearing in February 2020, the trial court entered a judgment dissolving the marriage and finding that Michael owed over $200,000 in child and spousal support arrears, largely due to his failure to pay support based on substantial commissions he earned between

2016 and 2019. After a second hearing in September, the court entered a second judgment that divided the parties' assets and debts, ordered Michael to pay $650 per month in post-judgment spousal support, and awarded Andrea's counsel $7,500 in fees and $2,000 in sanctions pursuant to Family Code sections 3557 and 271.[1]

Michael appeals the judgments entered after these two hearings, stating that his "foremost challenges" are to the orders regarding child support, spousal support, and attorney fees. He contends the trial court improperly "excluded classes of evidence" when it refused to allow him to directly question Andrea or to provide his own testimony. We reject this contention because the record indicates that the trial court properly exercised its discretion to limit the scope of evidence to the financial issues relevant at trial—not the custody issues that Michael was focused on.[2] Michael also argues that the trial court "was not interested" in his position that "all his commission [income]" had been "assigned . . . to court-ordered payments to professionals" and contends that, by ordering child and spousal support based on his commissions and then subsequently awarding attorney fees, the trial court impermissibly "double-" and "triple-dipped" into his commission income. The record shows, however, that the trial court considered Michael's arguments regarding how he spent his commission income but found that, aside from certain documented payments for which he was credited, Michael

---

[1]    Unless otherwise indicated, all statutory citations are to the Family Code.

[2]    Even though custody issues are beyond the scope of this appeal, Michael's appellate brief contains an extensive discussion of the parties' custody dispute.

failed to provide any *evidence* of additional expenditures.  We find no error on this record and affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Andrea was a stay-at-home mother and homeschooled the children. Michael was the sole income earner and, since 2012, was employed in sales. The couple separated in May 2016.  Shortly thereafter, Andrea petitioned for a domestic violence restraining order.  Michael agreed to the entry of a "non-CLETS" restraining order and petitioned to dissolve the marriage.[3]

### A.  *Background to the Litigation*

Since separating, Michael and Andrea have contentiously litigated issues of child custody and visitation, child support, and spousal support.  An initial child and spousal support order was entered in November 2016.  In addition to providing for base child and spousal support, this order specified that percentages of Michael's gross commissions were owed as an "*Ostler-Smith*" component of support.[4]  According to Andrea, Michael failed to make any support payments from commissions he earned from 2016 through 2019.

Michael states that as early as December 2016, "the four older children had already rejected [him]."  He began participating in conjoint therapy and other professional services with the youngest child around that time.

---

[3]     "CLETS" refers to the California Law Enforcement Telecommunications System through which restraining orders are reported to law enforcement.  (*In re Marriage of Reichental* (2021) 73 Cal.App.5th 396, 399, fn. 1.)  The practice of entering "non-CLETS" domestic violence restraining orders has been recognized as being inconsistent with section 6380.  (See *Marriage of Reichental*, at p. 405; § 6380, subd. (j).)

[4]     See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54 (*Marriage of Ostler & Smith*).

3

In June 2017, an expert conducted a vocational evaluation of Andrea. The evaluator observed that Andrea married Michael in 1997 when she was 20 years old, had their first child the following year, never worked outside the home, and continued to homeschool their children, the youngest of whom was then in first grade.[5] She opined that Andrea could secure entry-level employment at an approximate earning capacity of $11.50 to $12.00 per hour and, if she strengthened her computer skills and obtained office experience through volunteering, could increase her earning capacity slightly to $13.00 to $14.00 per hour. Andrea subsequently reported that she obtained part-time work in administrative positions beginning in August 2017 and enrolled in school to receive a certificate in computer science and information technology. She said it would take her two years to earn the referenced certificate and three years to earn an associate degree.

In August or September 2017, the family court directed Michael to turn over any commission payments he received to his counsel for placement in an attorney's client trust account. The order contemplated that the deposits would pay for a child custody evaluation (Evid. Code, § 730) and other professional services. "The remainder of said commissions" were directed to be held in trust until further order of the court. Statements reflecting Michael's deposits to the client trust account, the balance of the account, or evidence of payments made from that account are not included in the record.

In November 2019, the parties appeared before another family court judge who issued orders on child custody and visitation. Michael previously had one brief weekly visit and one weekly conjoint therapy session with the youngest child only. At the hearing, he was granted additional alternate

---

[5] In 2018, the court ordered the two youngest children to begin attending public school.

weekend visits with that child. The court indicated that equal timeshare for the youngest child was the "goal" or "endgame" "if all goes well." In addition, the court ordered conjoint therapy with the second-youngest child.

Trial on financial issues was set for February 13, 2020. Two weeks before the scheduled trial date, Michael filed an ex parte request that the reserved date be used not to decide financial issues, but instead "to address very urgent custody issues." He stated he was unable to prepare for trial because he was preoccupied with "ongoing custody problems" and "now must find a new job after [his] company went bankrupt . . . terminating all employees." The court denied Michael's request for a continuance, finding he failed to establish good cause.[6]

B. *February 13 Hearing on Support Issues*

At the trial on child and spousal support issues, the court recalculated guideline child support amounts for six separate periods of time beginning in November 2016 based on Michael's base salary of approximately $65,000 per year. The court also determined a base child and spousal support arrears balance of $14,968 with interest through December 31, 2019. In addition, the court found an *Ostler-Smith* arrears balance for the period of time between

---

[6] Michael included his ex parte papers in the appellate record but did not include any responsive papers, minute orders, or other documentation reflecting Andrea's or the court's response to this ex parte request. However, the court subsequently remarked on the record that there was a recent judgment on custody and visitation issues, which Michael had already requested to modify, and a long cause hearing had been calendared to address that issue.

November 1, 2016 and December 31, 2019 of $191,750, with interest.[7] The court reserved jurisdiction over various issues including spousal support, debt and asset division, and attorney fees and sanctions.

C. *September 4 Hearing on Reserved Issues*

After a hearing on September 4 addressing the reserved issues, the trial court issued orders dividing the parties' assets and debts, including characterizing Michael's student loans as a community liability and dividing them between the parties. The court awarded Andrea post-judgment spousal support of $650 per month effective September 1, 2020. In addition, it ordered Michael to pay Andrea's attorney fees of $7,500 (§ 3557) and sanctions of $2,000 (§ 271).[8]

## DISCUSSION

A. *Scope of the Appeal and Adequacy of the Record*

The judgments from which Michael appeals concern child and spousal support orders, asset and debt distribution, attorney fees, and sanctions. Issues regarding child custody and visitation are therefore not cognizable on this appeal. (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 571, 580 [scope of appellate review is limited to the judgment appealed and appellate court lacks jurisdiction to consider matters beyond the scope of the appeal].)

---

[7]     Judgment on the issues determined at the February 13, 2020 hearing was entered on December 3. In addition to the orders already mentioned, the judgment ordered dissolution of the parties' marriage, perfected a prior judgment of $6,732.50 with $470.35 interest for a total judgment of $7,202.85, and declined to reallocate attorney fees, finding that such fees would be charged to Michael.

[8]     Judgment on the issues determined at the September 4, 2020 hearing was entered on March 3, 2021.

6

Michael represents himself on appeal, as he did during the challenged proceedings in the trial court below. We are sensitive to the challenges faced by self-represented litigants on appeal. We nonetheless summarize some basic rules of the appellate process. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 ["pro. per. litigants must follow correct rules of procedure"].)

We start with a presumption that the judgment being appealed is correct. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.) It is the appellant's burden to show the contrary. (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 978.) To demonstrate error, the appellant's brief must present a complete and coherent statement of the relevant facts, in the light most favorable to the judgment, supported by appropriate citations to the record.[9] (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658; Cal. Rules of Court, rule 8.204(a)(1)(C).)

Appellants must also provide a record adequate to assess error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).) "Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]." (*Ibid.*) Michael submitted an appellant's appendix in connection with this appeal. (Cal. Rules of Court, rules 8.122(b)(1) & (3), and 8.124(b)(1).) The California Rules of Court obligate an appellant who elects to proceed by appendix to include, among other things, any document filed in the trial court which "is necessary for proper consideration of the issues, including . . . any item that the appellant should reasonably assume the respondent will rely on." (Cal. Rules of Court, rule 8.124(b)(1)(B).)

---

9    Michael's brief lacks proper citations to the record. The citations that are included frequently do not provide evidence to support his factual assertions, but simply reference another instance in which he previously made the same allegation.

Michael's appendix includes Andrea's trial briefs but fails to include most of the evidence she submitted to the court in support of her positions at trial. Andrea's trial exhibit list reflects that she filed Michael's tax returns, W-2s, and paystubs, as well as documents reflecting his commission payments and commission structures, bank records spanning periods from 2015 through 2020, and expert reports analyzing this data. Andrea also filed her own financial information, declarations, documentation reflecting job contacts, and e-mail correspondence between her and Michael for similar time periods—evidence that the trial court relied upon in deciding issues related to spousal support, attorney fees, and sanctions. Much of this information is missing from the record. On the other hand, Michael included in the record the evidence *he* filed below, including a significant amount of evidence relating to child custody issues which are largely irrelevant to the issues on appeal. This one-sided presentation of the relevant evidence fails to comply with the rules. (Cal. Rules of Court, rule 8.124(b)(1)(B).) Because it does not include the documents and exhibits filed by Andrea and relied on by the trial court below, Michael's appendix is not adequate for meaningful appellate review. As such, " ' "the appellant defaults and the decision of the trial court should be affirmed." ' " (*Jameson*, *supra*, 5 Cal.5th at p. 609; see *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 (*Maria P.*) ["Because they failed to furnish an adequate record of the . . . proceedings, defendants' claim must be resolved against them."].) On this basis alone, the appealed judgments should be affirmed.

Even considering the merits of Michael's contentions, however, we conclude he is not entitled to the relief he seeks.

B. *Child Support*

  1. *Additional Background Information*

On October 31, 2016, Michael deposited $25,000 into the couple's joint account, apparently for Andrea to use for purposes of support. An initial child support order was issued on November 1, 2016. In addition to setting base support amounts, this initial order included an *Ostler-Smith* provision directing that Michael pay a percentage of his gross commissions toward child and spousal support.[10]

At the February 13 hearing, Andrea asked that the court recalculate child support from the initial November 2016 order due to inaccuracies in the original calculations. She also requested an order for *Ostler-Smith* arrears consistent with the initial November 2016 support order, as well as a calculation of base child and spousal support arrears for the periods beginning November 1, 2016. Andrea presented evidence that, during the relevant time periods, Michael received base salary of approximately $65,000 per year and was also paid approximately $330,000 in commissions in 2016, $40,000 in 2017, $59,000 in 2018, and $97,000 in 2019.[11] His custodial timeshare was calculated at four percent for the period of November through December 2016, eight percent for the periods of January through June 2017 and July 2017 through July 2018, three percent for the period of August 2018 through June 2019, five percent for the period of July 2019 through October 2019, and eight and a third percent for the period beginning November 2019.

---

[10] Michael acknowledges that, through counsel, he stipulated to the *Ostler-Smith* percentages to be applied to his commission income.

[11] Michael asserted that his employer's company had gone bankrupt in June 2019 but acknowledged he had not filed an updated income and expense declaration.

Andrea called an expert to testify to the calculations of the *Ostler-Smith* component of support and arrears balances. The expert calculated that Michael owed $164,468 in *Ostler-Smith* commission and bonus arrears, plus interest of $27,282, for a total of $191,750 owed for *Ostler-Smith* arrears for the period between November 1, 2016 and December 31, 2019. In calculating this amount, she acknowledged that Michael made a $25,000 payment in October 2016 and considered this payment as an offset of the amount owed. The expert calculated base or guideline child support arrears of $632 and spousal support arrears of $11,090 for a total balance of $11,722, plus interest of $3,246, for a total guideline support arrears balance of $14,968.[12]

With respect to the *Ostler-Smith* component of child support, Michael contended he was entitled to significant offsets for payments he claimed were made for purposes of support or toward court-ordered expenses, including conjoint therapy for the children. The court acknowledged that Michael had been credited for a $25,000 payment he made to Andrea in 2016, which was considered in calculating the *Ostler-Smith* arrears balance. Michael contended he was entitled to additional credits but was unable to provide evidence to support his contentions. For example, he stated that he had previously been directed to place his commission payments into his attorney's client trust account and claimed that money had been used to pay for conjoint therapy and other court-ordered expenses. He asserted that he had paid 100 percent of his commissions over the course of 12 or 13 months into the

[12] The expert testified that she was missing paystubs for certain months in 2017 and 2018, and for those instances she used W-2s to calculate the gross amount of bonuses or commissions paid. She also explained that she applied the *Ostler-Smith* bonus table to the gross commission amount in accordance with the November 2016 order.

trust account and argued that he was entitled to a credit for that amount. Andrea disputed that Michael had paid all his commissions to the trust account. When the court asked Michael how much money he deposited into the trust account, Michael stated he "couldn't find that specific information."

In addition, Michael was unable to provide evidence of any payments made from his commissions. He explained that he had bills of $5,200 and $7,000 from one doctor and $7,482 from a second doctor and claimed he had used his commissions to pay these bills in full. But he admitted he did not have evidence showing payment of those bills. Andrea's counsel indicated she had received evidence indicating that payments of $4,000 and $250 had been made from the trust account to one doctor.

In another attempt to obtain additional credit, Michael presented the court with a spreadsheet he prepared. He claimed it reflected the parties' assets and debts at separation as well as payments Michael made to Andrea or on her behalf. Michael alleged that, during the period between the date of separation and October 31, 2016, he made payments to Andrea totaling $81,860—far more than the $25,000 for which he was credited. He stated he made these payments "in view of all of the commission [he] knew that was coming in," and contended that this amount should offset any arrears amount owed. Andrea objected that the spreadsheet lacked foundation and argued that Michael presented no evidence to support the claimed amounts. The court sustained her objection. Andrea also disputed specific payments that the spreadsheet indicated Michael paid on her behalf. She observed, for example, that one payment of $10,000 reflected in the spreadsheet as having been made on her behalf was actually a payment Michael made to his own attorneys.

The court found that the commission payments Michael received between May 27, 2016 and October 28, 2016 were a community property asset. It calculated an *Ostler-Smith* arrears balance for the period of time between November 1, 2016 and December 31, 2019 of $191,750, comprised of $164,468 in principal plus $27,282 in interest. The court observed that jurisdiction had previously been reserved to "revisit whether [Michael was] entitled to credits for anything during that period of time," but noted that "I don't have anything that really substantially resembles any kind of a prove-up from your perspective . . . ." The court had already credited Michael for the $25,000 support payment made in 2016 and one-half of the $4,250 paid to a doctor, noting that this credit was awarded "in the amount . . . that the [c]ourt is confident [was] paid . . . ." The court specifically denied Michael credits "for other household expenses he believes he incurred between the date of separation and October 31st, 2016."

2. *Applicable Law*

In general, child support awards are reviewed for abuse of discretion. (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234; *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527.) "We review factual findings regarding a child support award for substantial evidence. [Citations.] That review requires us to consider the record in a light most favorable to the respondent, and to presume the existence of every fact that reasonably could be deduced from the evidence." (*S.P. v. F.G.* (2016) 4 Cal.App.5th 921, 934.) "Even in the absence of a responding brief . . . , we adhere to the requirement that the appellant affirmatively demonstrate prejudicial error." (*County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1068.)

Section 4055 sets forth the "statewide uniform guideline" for determining child support. Under the guideline, child support obligations are

divided "among the parents based on income and amount of time spent with the child by each parent." (§ 4052.5.) The amount of child support established by the uniform guideline formula is presumed to be the correct amount of child support to be ordered. (§ 4057, subd. (a).) The court may deviate from the presumptively correct guideline and order a different amount only in limited circumstances, and only after making certain required findings. (§ 4057; *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1245 (*McHugh*).) "Determining the amount of child support therefore is a highly regulated area of the law, and the only discretion the trial court has is the discretion conferred by statute or rule." (*McHugh*, at p. 1245, fn. omitted.)

"A parent's first and principal obligation is to support the parent's minor children according to the parent's circumstances and station in life," and "[c]hildren should share in the standard of living of both parents." (§ 4053, subds. (a) & (f); see also *Marriage of Ostler & Smith, supra*, 223 Cal.App.3d at p. 54 [awarding supported children percentage of noncustodial father's future bonuses ensures they will share in his standard of living].) "An [*Ostler-Smith*] percentage is assessed . . . for 'any discretionary bonus actually received.' [Citation.] It was originally justified on the ground that future bonuses are not guaranteed, and it would be unfair to require the obligor to file motions for modification every time a bonus is reduced." (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 27.) "An *Ostler*[-]*Smith* provision is 'an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received.' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949.) As such, on top of guideline child support calculated on base income, an

13

*Ostler-Smith* order can require a parent to pay additional support based on a percentage of any income earned as bonuses or commissions.

3. *Analysis*

Here, the trial court calculated guideline support amounts based on Michael's base pay and his timeshare for each period, consistent with the statewide uniform guidelines. (*McHugh*, *supra*, 231 Cal.App.4th at p. 1245.) Even though Michael's base pay and historical timeshare comprised the critical factors for determining guideline child support, the appellate record does not include the evidence Andrea presented—and which the trial court considered—regarding Michael's base pay and historical timeshare amounts. Similarly, Michael failed to submit the evidence relating to earned commissions. The expert relied on this evidence and the stipulated commission tables to calculate the *Ostler-Smith* support amounts, and the trial court relied on this analysis in issuing an order on arrears. By failing to include this critical evidence in the record, Michael has forfeited any challenge to the support calculations. (*Jameson*, *supra*, 5 Cal.5th at p. 609; *Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296.)

In any event, Michael does not appear to contest the valuation of his base pay, earned commissions, or historical timeshare. Instead, he contends that the order for support payments from the earned commissions amounts to "double-dipping" into his commission payments because, according to Michael, some or all the commissions he earned were already paid toward court-ordered services including conjoint therapy, evaluators, monitors, court reporters, or other professionals in the litigation, and therefore should not be subject to reallocation as support. The trial court considered Michael's claim

and largely rejected it, finding that he provided "insufficient evidence to support [the requested] credits."[13]

Michael contends the trial court erred by refusing to recognize three types of "evidence" that he claims prove he spent his commissions on court-ordered payments to professionals: invoices reflecting bills for services, a spreadsheet he prepared purporting to summarize payments he claims he made, and the prior court orders contemplating that his commission payments would be deposited into an attorney's client trust account. The trial court considered all this purported "evidence" and found it insufficient. We review a trial court's evidentiary rulings for abuse of discretion. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.) Michael has not established any abuse here.

At the hearing, Michael asserted that he made payments including $5,200 in 2017, $7,000 in 2018, and $18,000 in 2019; he claimed that invoices included in his lodged documents were sufficient to prove he made payments in those amounts. The trial court acknowledged the invoices reflected the amounts the parties were *billed* for services but did not necessarily establish the amounts Michael *paid*, which was the critical disputed issue. Andrea's counsel represented that she had never been provided with evidence that Michael had paid those bills and stated, "I don't see it coming out of any of his bank records." Michael admitted that his father made a payment toward professional services, and further conceded he did not have canceled checks or other evidence establishing that he paid those bills.

The trial court rejected the invoices as evidence of payments made. We find no abuse of discretion in the trial court's decision because the invoices

_____

13    As noted, the court did credit Michael for the $25,000 support payment made in 2016 and one-half of the $4,250 paid to professionals.

15

did not establish that Michael paid for the professional services from his commission earnings. Michael's admission that his father made payments toward professional services undercut his claim that he should be credited for making all payments, and Michael provided no evidence to show what, if anything, he had actually paid: no receipts, credit card statements, or bank statements. Similarly, the trial court rejected the spreadsheets Michael offered as proof of payments he claimed he made to support Andrea after their separation.[14] Andrea objected to the spreadsheet presented in court as lacking foundation and unsupported by evidence, and the trial court properly sustained her objection. Michael presented no foundational evidence to substantiate the sweeping statements in the spreadsheets.

Michael references prior court orders directing him to deposit his commissions into an attorney's client trust account. He cites the presumption codified in Civil Code section 3548 that "[t]he law has been obeyed," arguing it should be presumed that he indeed paid all his commission payments into trust accounts. But even if such a presumption applied, Andrea disputed that Michael had deposited all his commission into the trust account and argued there was no evidence to show he had done so. In response, Michael acknowledged his lack of proof in the form of payments made, account statements, or receipts. In the absence of such evidence, we find no error.

_____

14    Several similar spreadsheets appear in the record. One lists purported expenses for "[r]ent," "[u]tilities," "[g]roceries," "[v]ehicle," "[c]onjoint [t]herapy," "[m]onitors," "[c]ourt [r]eporters and [t]ranscripts," "[m]y [a]ttorneys," and more, all listed as round numbers. A second spreadsheet, which Michael presented in court and which was discussed by the parties, similarly reflects round numbers purporting to reflect "payments to mother," "commissions owed and paid," and various other financial information. Like the one dealing with alleged support payments, neither of these spreadsheets reference any documentation or evidence to support the data reflected in them.

16

Michael contends the trial court erred when it ordered guideline child support amounts, complaining that it "refus[ed] to exercise discretion" regarding the "[i]nterests of the [c]hildren," the "[h]igh [d]ebt of [p]ayor," and the "[h]ardship to the [p]arents." He repeats his argument below that, " 'regarding the financial needs of the children . . . [and the] total burden, [he] would argue [he has] a much greater burden.' " He further contends he was entitled to timeshare for the youngest child's school hours, even though Andrea had the overwhelming custodial timeshare. (But see *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 145 [rejecting father's claim that he should receive credit for part of child's time in day care, stating: "It is the custodial spouse who, after all, has the burden of finding, arranging and fronting the money for appropriate day care, who must deliver and pick up the child, and whose work day will be interrupted if there are any medical or other emergencies."]; *DaSilva v. DaSilva* (2004) 119 Cal.App.4th 1030, 1034 ["Timesharing has been credited to parents having full responsibility for the physical situation and care of a disabled adult child [citation], and may also include the time spent during court-ordered 'grandparent's visitation (§ 3103, subd. (g)(1)), as long as that parent is responsible for the child during that time.' "].) Where, as here, the court orders child support consistent with the uniform guideline, the amount of child support is presumed to be correct. (§§ 4055, 4057, subd. (a).) Michael has not rebutted that presumption or otherwise established an abuse of discretion.

C. *Division of Assets and Debts, and Spousal Support*

   1. *Additional Factual Background*

At the September hearing, the trial court addressed the reserved issues of dividing the community estate and Andrea's requests for spousal support, attorney fees, and sanctions. Michael requested to postpone the hearing "to

17

consolidate all issues, custody and financial" and made an oral request for sanctions "based on the custody issues." He also requested 90 minutes to present testimony from himself and Andrea. After denying Michael's request for a continuance, the judge encouraged Michael to present his arguments but emphasized he should "break them down as to each of the categories of things that we are going to talk about today."[15]

The court first divided the parties' household goods, vehicles, bank accounts, and retirement savings accounts. With respect to the parties' debts, the judge accepted Michael's claim that he had paid off certain credit cards and attributed half of the obligation to Andrea. He found that the student loans Michael had incurred in 1998 and 2006 to obtain his undergraduate and graduate degrees substantially benefitted the community and, accordingly, divided them equally between the parties.

Turning to the issue of spousal support, the court indicated it had reviewed the parties' income and expense declarations. Andrea's income was currently approximately $1,600 per month, and Michael was receiving income through unemployment benefits.[16] Michael stated he did not "see

---

[15] The court noted "something of a tendency on [Michael's] part to want to take testimony on the custody and visitation issues in this case," and indicated it would not "conduct a mini trial on custody and visitation for [Michael] to address credibility issues that [he] wanted to present to the court."

[16] The record includes a single income and expense declaration purportedly completed on Michael's behalf in July 2020. It is not signed and bears no file stamp. It indicates that Michael's seven-year employment in "[s]ales" as a "[m]anufacturer's [r]ep" ended in January 2020. It reports income of $2,400 derived from unemployment compensation last month and monthly expenses of $3,524. Andrea's income and expense declarations do not appear in the record.

any job opportunities" and did not believe that "at any point in time" he would be able to return to employment like his prior position. He claimed he was experiencing "trauma . . . with the shutdown" and was not in "the position" to "put [his] name out and get to work and make some good money."[17] Michael reiterated his request to question Andrea "to establish that she never had any plans to start a career or gain financial independence." The court encouraged him to focus on the factors set forth in section 4320 regarding spousal support. Michael averred that before the separation there was one year he made six figures, and before that the family was impoverished. He again requested Andrea's testimony, arguing that she had forfeited the right to spousal support and needed to be "motivated to go out there and work [and] get on-the-job training . . . ."

Andrea's counsel noted that the couple married "very closely out of high school," Andrea had only a high school education and was "being passed over" for jobs at restaurants, grocery stores, and gyms. Spousal support was necessary because Andrea could "barely afford" rent and basic necessities and had incurred significant credit card debt. She argued there was no evidence that Michael had sought employment since losing his prior position. In her view, Michael's approach—that Andrea needed to get a job but he was not going to get one—was internally inconsistent.

In response, Michael referenced issues concerning the parties' custody dispute. The trial court reiterated that the issue currently being decided was

---

17    The court stated that, with Michael's "history of employability," the court expected he would obtain full-time employment. Even at minimum wage, Michael would exceed the earnings from his unemployment benefits. The court observed that "there is something about this divorce and this litigation that is very consuming to [Michael]," and observed that "there is an exceptionally persistent quality to some of the litigation [Michael had] brought before the court."

19

Andrea's request for post-judgment spousal support.  Michael indicated he had "nothing else to add."

The court found that, based on the parties' testimony and declarations, the standard of living during marriage was middle class.  As required by section 4320, it considered the "extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account . . . [t]he marketable skills of the supported party, the job market for those skills, the time [required] . . . to acquire . . . those skills."  (§ 4320, subd. (a)(1).)  The court observed that throughout the parties' nearly 19-year marriage, Andrea "was a stay-at-home mother caring for five minor children" and had no college education.  She had "tried to obtain some certificates."  She was, in the court's view, "of an age where . . . it is appropriate for her to seek additional training and seek additional qualifications," but was currently "at entry-level employment on a part-time basis, and because of the lifestyle during the marriage, she has very little work experience."

The court next addressed whether Andrea's "present or future earning capacity is impaired by periods of unemployment . . . incurred during the marriage to permit [her] to devote time to domestic duties" (§ 4320, subd. (a)(2)) and found that Andrea was not employed during the marriage because she stayed home to care for the children.  It further determined that Andrea contributed to Michael's education, training, or career (§ 4320, subd. (b)) and that her attention to domestic matters allowed Michael to obtain multiple degrees and be "the sole income earner" during the marriage.  Evaluating Michael's ability to pay spousal support, taking into account his "earning capacity, earned and unearned income, assets, and standard of living" (§ 4320, subd. (c)), the court found that notwithstanding his current

unemployment, Michael's recent six-figure income was "suggestive of his ability to pay support." It considered "[t]he needs of each party based on the standard of living established during the marriage" (§ 4320, subd. (d)) and observed that "[t]here was a work history associated with father," but "wife lives in a recreational vehicle with the parties' three minor children. She represents she is not able to afford . . . [or] qualify for rent anywhere else." With respect to the parties' "obligations and assets" (§ 4320, subd. (e)), the court explained that "[Andrea] is unable presently to maintain her monthly expenses. Husband advises he is living in a one-bedroom apartment . . . and is able to pay the monthly rent for the unit." It added that Michael "has significant obligations" and neither party "has significant assets. . . . There are significant student loan debts in each party's ledger." Finally, the court observed that the parties were married for over 18 years (§ 4320, subd. (f)) and that, because this was a marriage of long duration (§ 4336), nothing in the code was intended to "limit the court's discretion to order [spousal] support." (§ 4320, subd. (*l*).) It then ordered Michael to pay $650 per month in post-judgment spousal support, effective September 1, 2020.

2. *Applicable Law*

" ' "Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360. Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.' [Citations.] The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and

21

equitable award. (§ 4320, subds. (c)-(e), (n).)" ' " (*In re Marriage of Maher & Strawn* (2021) 63 Cal.App.5th 356, 363; see *In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442.)

" ' "In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it. 'The issue of spousal support, including its purpose, is one which is truly personal to the parties.' [Citation.] In awarding spousal support, the court must consider the mandatory guidelines of section 4320. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion. [Citation.] 'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.' " ' [Citation.] An abuse of discretion occurs ' "when it can be said that no judge reasonably could have made the same order." ' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 424 (*Grimes & Mou*).)

3. *Analysis*

Michael contends that some of the trial court's findings are not supported by evidence in the record. Specifically, he objects to the findings that the couple enjoyed a middle class standard of living, that Andrea "tried to obtain some certificates" through education, and that she is not "able to qualify for rent anywhere else." Although Michael has forfeited any challenge to the sufficiency of the evidence to support the trial court's findings by failing to provide an adequate appellate record (*Jameson, supra,* 5 Cal.5th at p. 609; *Maria P., supra,* 43 Cal.3d at pp. 1295-1296), we note

22

that substantial evidence supporting these findings is evident even in the incomplete record that Michael provided.

"The marital standard of living is 'a general description of the station in life the parties had achieved by the date of separation,' rather than a 'mathematical standard.' " (*Grimes & Mou, supra*, 45 Cal.App.5th at p. 424.) Here, evidence of Michael's six-figure salary between 2016 and 2019 supports the trial court's finding that the family enjoyed "a middle-class standard of living." The court's observation that Andrea "tried to obtain some certificates" is supported by Andrea's report that, after her 2017 vocational evaluation, she had enrolled in school to receive a certificate in computer science and information technology even though she had not yet completed all the requirements. The court's statement that Andrea is not able to "afford" or "qualify for rent" elsewhere simply acknowledges the improbability of Andrea finding less expensive housing than the recreational vehicle she was currently living in with the children, echoing assertions made in her trial brief and at trial.

The trial court carefully considered each of the relevant factors set forth in section 4320, making detailed findings that are supported by the evidence. We find no abuse of discretion in the trial court's award of permanent spousal support. (*Grimes & Mou, supra*, 45 Cal.App.5th at p. 426 [affirming trial court's spousal support award where trial court considered the relevant statutory factors and made findings supported by the evidence].)

Michael further contends the court erred in awarding support without allowing him to take testimony from Andrea. As he did at trial, he argues that if he had been able to question Andrea, he could have established "that this very divorce itself was partially motivated by her desire to never work or

23

get a job." He believes he could show that Andrea unreasonably delayed or refused to seek employment and was not a credible witness.[18]

The record indicates the court considered Michael's requests for Andrea's testimony and observed that Michael wanted "to take testimony on the custody and visitation issues in this case" rather than focusing on the financial issues. The judge explained it was not appropriate to "conduct a mini trial on custody and visitation for [Michael] to address credibility issues that [he] wanted to present to the court." Focusing on spousal support, the trial court directed Michael to address the section 4320 factors. When Michael again referenced the parties' custody dispute, the court reiterated that the issue being addressed was spousal support, and Michael indicated he had "nothing else to add."

In the arguments he presents on appeal, Michael still fails to explain how the testimony he wanted to elicit from Andrea relates to the factors the trial court considered with respect to the spousal support award or how her testimony would have affected the trial court's findings. He merely argues he wanted to demonstrate "how intimately intertwined the custody and financial narratives really are." Because Michael has failed to identify testimony "that would have had a bearing on the court's decision" regarding the distribution of assets and the spousal support award, we find no error in the trial court's refusal to allow Michael to further question Andrea. (*In re Marriage of*

---

18    Michael additionally claims that, through testimony, he would have been able to show "Andrea's domestic violence." Section 4320 contemplates that "*documented evidence* of any history of domestic violence" may be considered as a factor in determining permanent spousal support. (§ 4320, subd. (i), italics added.) Although Michael alleged that Andrea's conduct after their separation amounted to abuse and argued below that one court "almost" made a finding she engaged in domestic violence, no documented evidence of a history of domestic violence by Andrea appears in the record.

*Diamond* (2021) 72 Cal.App.5th 595, 605 [no prejudicial error in refusing to allow testimony where appellant fails to identify testimony "that would have had a bearing on the court's decision"].)

D. *Attorney Fees and Sanctions*

Andrea requested an award of attorney fees under section 3557, arguing that despite Michael's ability to pay and access to funds, he failed to make timely support payments, forcing her to incur litigation fees to obtain a court order for unpaid support.[19] The trial court agreed and awarded attorney fees of $7,500.

Andrea requested additional fees as sanctions under section 271, asserting that Michael promoted excessive litigation while he and his counsel failed to treat Andrea and her counsel with civility and respect. For example, in one e-mail, Michael's counsel told Andrea's counsel that he would "use small words to make sure everyone can understand them"; later he wrote, "I guess the words were not small enough." In another e-mail, Michael told Andrea's counsel, "I don't think you should practice law anymore." Michael admitted the e-mails were sent. He apologized for one "inappropriate" e-mail but stated, "I want to be clear that I sent it because I believe it," and reiterated that he thought counsel should "lose her license." The trial court found that Michael's extensive litigation did not warrant sanctions but concluded that Michael and his counsel "crossed the line" of civil discourse in stating counsel should not practice law anymore and referencing the need to use "small words." The court observed, "It is not appropriate for counsel or his client to insult or belittle . . . the parties or the participants when those

---

[19] Andrea alternatively requested fees under section 2030. Because the court awarded fees under section 3557, we confine our discussion to that provision.

characteristics are not at issue in the case." The trial court awarded $2,000 as sanctions in the form of attorney fees to Andrea's counsel.

Section 3557 provides that a court shall award reasonable attorney fees to a supported spouse in an action to enforce a support order under certain circumstances. "Notwithstanding any other provision of law, absent good cause to the contrary, the court, in order to ensure that each party has access to legal representation to preserve each party's rights, upon determining (1) an award of attorney's fees and cost under this section is appropriate, (2) there is a disparity in access to funds to retain counsel, and (3) one party is able to pay for legal representation for both parties, shall award reasonable attorney's fees" to the "custodial parent or other person to whom payments should be made in any action to enforce . . . [¶] [a]n existing order for child support" or to "[a] supported spouse in an action to enforce an existing order for spousal support." (§ 3557, subd. (a).)

"Section 271 . . . allows for a sanctions award of attorney fees and costs based on conduct that frustrates the policies of settlement, cost reduction, and cooperative resolution of litigation." (*In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 592 (*Marriage of Simmons*).) "It has been said that section 271 . . . imposes a 'minimum level of professionalism and cooperation,' to effect the policy favoring settlement of family law litigation—and a reduction of the attendant costs." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524 (*Davenport*).) "Some courts have said the section authorizes attorney fees and costs as a penalty for obstreperous conduct." (*Ibid.*)

An award of attorney fees or sanctions rests in the sound discretion of the trial court and "will not be reversed on appeal in the absence of a clear showing of abuse." (*Hicks v. Hicks* (1967) 249 Cal.App.2d 964, 969; see

*Marriage of Simmons, supra*, 215 Cal.App.4th at p. 595 [the amount of sanctions "is a matter for the trial court to decide in the sound exercise of its discretion"].)

Here, the trial court observed that a fee award under section 3557 was warranted because Andrea was forced to incur substantial attorney fees to enforce the existing support orders when Michael neglected to timely pay the *Ostler-Smith* components due for child and spousal support. The court also found a "significant disparity in access to funds," consistent with its prior findings that Michael's education, work experience, and earning capacity was significantly more substantial than Andrea's. The court's findings justify the section 3557 fee award.

In addition, the trial court found that Michael and his counsel's inappropriate e-mails crossed the line of respectful discourse, which frustrates cooperation and any potential to resolve disputes without litigation. (See *Davenport*, *supra*, 194 Cal.App.4th at p. 1524.) The trial court's findings justify the sanctions awarded under section 271.

Michael contends that, by awarding Andrea attorney fees, the trial court impermissibly "triple-dipp[ed]" into his commissions.[20] We have already rejected Michael's contention that the trial court's support orders amounted to an impermissible "double-dip[]" into commissions, and for similar reasons we likewise reject Michael's contention regarding a "triple-dip[]."

Michael contends the trial court erred when it failed to recognize *his* request for sanctions. At the September hearing, Michael indicated he

_____

[20] As previously discussed, Michael contended the "first dip" was his purported payment of commissions toward professional services ordered by the court and the "second dip" was the order regarding child and spousal support arrears.

intended to request "very significant sanctions, but that request is based on the custody issues . . . [and] without further custody litigation, sanctions cannot be properly assessed." Before adjourning the hearing, the trial court confirmed that future dates were reserved for the determination of other matters in the parties' litigation. Contrary to Michael's claim that he was "barred" from seeking sanctions, nothing in the record indicates that Michael is precluded from seeking fees or sanctions in future proceedings, if appropriate under the circumstances.

DISPOSITION

The judgments are affirmed. Because Andrea did not file a brief or otherwise make an appearance, no costs are awarded on appeal. (See *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 704.)


DATO, J.

WE CONCUR:



O'ROURKE, Acting P. J.



DO, J.